United States District Court

For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PAUL C. BOLIN,

    Plaintiff,

v.

M. J. McGARVEY; et al.,

    Defendants.
                                /

No. C 06-4398 SI (pr)

**ORDER OF SERVICE**

### INTRODUCTION

Paul C. Bolin, an inmate at San Quentin State Prison, filed this pro se civil rights action under 42 U.S.C. § 1983. The complaint is now before the court for initial review under 28 U.S.C. § 1915A.

### BACKGROUND

Bolin has filed a very lengthy complaint that is devoted primarily to alleged problems in his placement and retention in the adjustment center of San Quentin's death row. His complaint also asserts numerous claims concerning the conditions within the adjustment center, ranging from the dress code to food service to exercise time. Bolin later filed an amendment to the complaint in which he proposes to add another claim about yet another feature of prison life – the procedure for acquiring writing supplies – that he does not like.

**DISCUSSION**

A.   Standards Of Review

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. See id. at 1915A(b)(1),(2). Pro se pleadings must be liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

B.   Placement/Retention In Adjustment Center

The main focus of the complaint is Bolin's reclassification that caused his transfer from regular death row housing to the adjustment center. Apparently, the better-behaved death row inmates are classified as Grade A and the less well-behaved are classified as Grade B. The Grade B inmates apparently are put in the adjustment center, which is more restrictive than the other housing for death row inmates. See Barnett v. Centoni, 31 F.3d 813, 814 (9th Cir. 1994); Thompson v. Enomoto, 915 F.2d 1383, 1387 & n.5.

The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution protects individuals against governmental deprivations of life, liberty or property without due process of law. Changes in conditions of confinement may amount to a deprivation of a constitutionally protected liberty interest, provided that the liberty interest in question is one of real substance. Sandin v. Conner, 515 U.S. 472, 477-87 (1995).

2

When prison officials initially determine whether a prisoner is to be segregated for administrative reasons due process requires that they comply with the following procedures: (1) they must hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated, (2) the prisoner must be informed of the charges against him or the reasons segregation is being considered, and (3) the prisoner must be allowed to present his views. See Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir. 1986); see also Barnett, 31 F.3d at 815. Due process also requires that some evidence support the decision. Superintendent v. Hill, 472 U.S. 445, 455 (1985); Toussaint, 801 F.2d at 1104-05. Due process also may require that the evidence have "some indicia of reliability" to satisfy due process requirements. See Madrid v. Gomez, 889 F. Supp. 1146, 1273-74 (N.D. Cal. 1995). Due process does not require detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, a written decision describing the reasons for placing the prisoner in administrative segregation or disclosure of the identity of any person providing information leading to placement of a prisoner in administrative segregation.[1] See Toussaint, 801 F.2d at 1100-01. Accord Wilkinson v. Austin, 545 U.S. 209, 228-29 (2005) (determining that prisoners are constitutionally entitled only to the informal, non-adversary procedures set forth in Greenholtz v. Inmates of Neb. Penal and Correctional Complex, 442 U.S. 1 (1979), and Hewitt v. Helms, 459 U.S. 460 (1983), prior to assignment to "supermax" facility). Following placement in administrative segregation, prison officials must engage in some sort of periodic

---

[1] If Bolin's placement in the adjustment center had been a disciplinary decision rather than an administrative one, the procedural requirements would have been greater. The process due in a prison disciplinary proceeding includes written notice, time to prepare for the hearing, a written statement of decision, allowance of witnesses and documentary evidence when not unduly hazardous, and aid to the accused where the inmate is illiterate or the issues are complex. Wolff v. McDonnell, 418 U.S. at 564-7. There also must be "some evidence" to support the disciplinary decision. Superintendent v. Hill, 472 U.S. at 454.

Bolin alleged that he did not receive a rule violation report, strongly indicating that his movement to the adjustment center was due to an administrative rather than a disciplinary decision. See Complaint, p. 23. Prison administrators, not prisoners, determine what kind of decisions they are making. Bolin cannot re-characterize an administrative decision and call it a disciplinary one if the prison administrators did not do so. Bolin also had no constitutional right to be charged with a disciplinary offense.

3

review of the inmate's confinement. See Hewitt, 459 U.S. at 477 n.9; Toussaint, 801 F.2d at 1101.

Liberally construed, the complaint states a due process claim in that it alleges that Bolin's due process rights were violated when he was not provided adequate notice of the charges, was not allowed to present his views, and there was not some evidence to support the classification committee's decisions to place and retain him in the adjustment center. The complaint adequately links the following defendants to the due process claim as they allegedly were on the classification committee(s) that placed and retained Bolin in the adjustment center: acting warden Stokes, acting warden S. Petrakis, captain Spears, captain Roman, and counselors Bautista and Lawson. See Complaint, pp. 24, 43-51.

The complaint contains pages and pages of argument about the many errors Bolin saw in the placement and retention decisions as well as the quality of the evidence. Due process required only that the procedures identified above be followed. Bolin's numerous other allegations about other things that he believes would have improved the quality of the decision-making do not state due process claims. For example, due process did not require that anyone be given a polygraph test, that the prisoner be informed of the specific number of informants against him, that the charge be discussed in great detail in the notice, or that he be provided staff assistance. See Complaint p. 25-28.

Bolin also asserts that the allegations against him were false and fabricated. This activity does not amount to a due process violation. A prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. See Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986). As long as a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983. See Hanrahan v. Lane, 747 F.2d 1137, 1140-41 (7th Cir. 1984).

Bolin's allegations that there was a conspiracy that led to his placement in the adjustment center are conclusory and are insufficient to hold anyone liable for anything. A mere allegation of conspiracy without factual specificity is insufficient.'" Johnson v. California, 207 F.3d 650,

655 (9th Cir. 2000) (quoting <u>Karim-Panahi v. Los Angeles Police Dep't</u>, 839 F.2d 621, 626 (9th Cir. 1988), <u>reversed on other grounds by</u> <u>Johnson v. California</u>, 125 S. Ct. 1141 (2005). Bolin has not stated a claim for relief based on defendants' alleged plot/threats/conspiracy to cause him to be moved to the adjustment center.

C.   <u>Administrative Appeals</u>

Bolin complains about the processing of his inmate appeals as well as the decisions therein. There is no federal constitutional right to a prison administrative appeal or grievance system for California inmates. <u>See</u> <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988); <u>Antonelli v. Sheahan</u>, 81 F.3d 1422, 1430 (7th Cir. 1996). The denial of an inmate appeal is not so severe a change in condition as to implicate the Due Process Clause itself and the State of California has not created a protected interest in an administrative appeal system in its prisons. California Code of Regulations, title 15 sections 1073 and 3084.1 grant prisoners in the county jails and state prisons a purely procedural right: the right to have a prison appeal. The regulations simply require the establishment of a procedural structure for reviewing prisoner complaints and set forth no substantive standards; instead, they provide for flexible appeal time limits, <u>see</u> Cal. Code Regs. tit. 15, § 3084.6, and, at most, that "[n]o reprisal shall be taken against an inmate or parolee for filing an appeal," <u>id.</u> § 3084.1(d). A provision that merely provides procedural requirements, even if mandatory, cannot form the basis of a constitutionally cognizable liberty interest. <u>See</u> <u>Smith v. Noonan</u>, 992 F.2d 987, 989 (9th Cir. 1993); <u>see also</u> <u>Antonelli</u>, 81 F.3d at 1430 (prison grievance procedure is procedural right that does not give rise to protected liberty interest requiring procedural protections of Due Process Clause). Bolin had no federal constitutional right to a properly functioning appeal system. An incorrect decision on an administrative appeal or failure to process the appeal in a particular way therefore did not amount to a violation of his right to due process. The claims related to the appeals process are dismissed.

5

D.     Retaliation Claim

Bolin alleges that the charges against him were falsified as a means for ISU lieutenant V. W. Lawson to retaliate against Bolin for Bolin's earlier grievances and testimony against Lawson. See Complaint, pp. 32- 35. Liberally construed, the allegations state a § 1983 claim for retaliation. See Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). Although the complaint states a claim against defendant Lawson, the conclusory allegations of conspiracy with regard to the retaliation claim are insufficient to link any other defendant to this claim.

E.     Conditions In The Adjustment Center

In addition to his claims about his placement in the adjustment center, Bolin asserts a grab-bag of claims about facets of life in the adjustment center that he finds objectionable. He complains about a dress code, religious services, handcuffing procedures, yard time, inmate input into other inmates' presence on the East block, showers, cold food, lack of salt and pepper, canteen services and other conditions. Complaint, p. 39-32, 51-66. He also filed an amendment to the complaint trying to add a new claim about the procedures for obtaining writing supplies in the adjustment center.

Rule 20(a) of the Federal Rules of Civil Procedure provides that all persons "may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action."

Bolin's wide-ranging complaint does not satisfy Rule 20(a) because it has too many unrelated claims and defendants. The defendants are different and are involved in different transactions and occurrences that occurred on different dates in different places. While the decisions to put and retain Bolin in the adjustment center all properly can be considered part of the same transaction or series of transactions and therefore may be asserted in one complaint, his laundry list of grievances about life within the adjustment center is not part of that

transaction/occurrence. Claims about life within the adjustment center involve different defendants, different events occurring on different dates, and different legal theories. The complaint does not present questions of law or fact common to all defendants. The claims concerning the conditions within the adjustment center are dismissed as improperly joined. The dismissal of these claims is without prejudice to Bolin filing one or more new actions in which he asserts his claims concerning the conditions in the adjustment center.

**CONCLUSION**

For the foregoing reasons,

1.  Plaintiff's complaint states a claim for relief under 42 U.S.C. § 1983 against defendants Stokes, Petrakis, Spears, Roman, Bautista and Lawson for a due process violation based on his placement and retention in the adjustment center. The complaint also states a § 1983 claim against defendant Lawson for retaliation. All other defendants and claims are dismissed.

2.  The clerk shall issue summonses and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the amended complaint and a copy of this order upon the following five defendants, all of whom apparently are employed at San Quentin State Prison:

- J. Stokes (chief deputy warden/acting warden)
- S. Petrakis (chief deputy warden)
- P. L. Spears (correctional captain)
- Roman (facility captain)
- A. Bautista (correctional counselor)
- V. W. Lawson (ISU lieutenant)

3.  In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

    a.  No later than **March 2, 2007**, defendants must file and serve a motion for summary judgment or other dispositive motion. If defendants are of the opinion that this case cannot be resolved by summary judgment, they must so inform the court prior to the date the motion is due.

7

   b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the court and served upon defendants no later than **April 6, 2007**. Plaintiff must bear in mind the following notice and warning regarding summary judgment as he prepares his opposition to any summary judgment motion:

> The defendants may make a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. [¶] Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. (See <u>Rand v. Rowland</u>, 154 F.3d 952, 962-63 (9th Cir. 1998).)

   c. If defendants wish to file a reply brief, they must file and serve the reply brief no later than **April 20, 2007**.

  4. All communications by plaintiff with the court must be served on a defendant's counsel by mailing a true copy of the document to defendant's counsel. The court may disregard any document which a party files but fails to send a copy of to his opponent. Until a defendant's counsel has been designated, plaintiff may mail a true copy of the document directly to defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that defendant.

  5. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

  6. Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute

1  pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of
2  address in every pending case every time he is moved to a new facility.

3    7.  Plaintiff is cautioned that he must include the case name and case number for this
4  case on any document he submits to this court for consideration in this case.

5    8.  The court reminds the parties that there is a 25-page limit on any legal brief
6  submitted in this action.

7    IT IS SO ORDERED.
8  Dated: December 18, 2006

_____
SUSAN ILLSTON
United States District Judge